IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

DAVID MITCHELL,

Plaintiff,

vs.

COUNTY OF DOUGLAS, a Nebraska Political
Subdivision, DONALD W. KLEINE, in his
individual and official capacity as Douglas
County Attorney, DOUGLAS COUNTY
ATTORNEY'S OFFICE, GARY OLSON,
Deputy Douglas County Attorney, individually
and collectively in their official capacity, KATI
KILCOIN, Deputy Douglas County Attorney,
individually and collectively in their official
capacity, DARA DELEHANT, Deputy Douglas
County Attorney, individually and collectively
in their official capacity, UNKNOWN
MEMBERS OF DOUGLAS COUNTY
SHERIFF'S OFFICE, individually and
collectively in their official capacity, THE CITY
OF OMAHA, a Municipal Corporation,
ROBERT WILEY, in his individual and official
capacity as a detective of the Omaha Police
Department, JONATHAN A. ROBBISS, in his
individual and official capacity as a Sergeant in
the Omaha Police Department Burglary
Division, TRISHA DUNWOODY, in her
individual and official capacity with the Omaha
Police Department Burglary Division, SHAWN
PEARSON, in his individual and official
capacity as a Detective with the Omaha Police
Department Burglary Division, CHRISTOPHER
LeGROW, in his individual and official capacity
as a Detective with the Omaha Police
Department, ALEXIS BOULTS, individually
and in her official capacity as a CVSA with the

NO. 8:23-CV-332


MEMORANDUM AND ORDER ON
DEFENDANTS' MOTIONS TO DISMISS

1

Omaha Police Department, DION SMITH,
individually and in his official capacity with the
Omaha Police Department, THAT TROSPER,
individually and in his official capacity with the
Omaha Police Department, PATRICK McGEE,
Deputy Douglas County Attorney, individually
and collectively in their official capacity,
UNKNOWN DDCA, Deputy Douglas County
Attorney, individually and collectively in their
official capacity,

Defendants.

Plaintiff David Mitchell filed a 48-page Complaint against numerous defendants including Douglas County, the City of Omaha, several officials from the Douglas County Attorney's Office and the Omaha Police Department, and unnamed individuals. Filing 1. "The overall gravamen of this complaint is there has been an ongoing civil conspiracy by Douglas County, specifically through Douglas County Attorney Donald Kleine, against the plaintiff David Mitchell, since August 1, 2019." Filing 1 at 3. Although Mitchell had counsel when he filed the Complaint, he is now pro se. Presently before the Court are two Motions to Dismiss, Filing 25; Filing 27, seeking dismissal of the Complaint in its entirety. For the reasons stated below, the Court grants these Motions to Dismiss.

## I.   INTRODUCTION

### A.  Factual Background

The Court considers the following nonconclusory allegations as true for the purposes of ruling on this motion. *See Bauer v. AGA Serv. Co.*, 25 F.4th 587, 589 (8th Cir. 2022) (quoting *Pietoso, Inc. v. Republic Servs., Inc.*, 4 F.4th 620, 622 (8th Cir. 2021)). The overview of Mitchell's claims is that defendant Douglas County Attorney Donald Kleine allegedly conspired with the

other defendants to criminally charge Mitchell with burglary, sexual assault, and domestic violence. Filing 1 at 3–4. Mitchell alleges that he is not guilty of any of these charges, and the former two charges "ended in manner indicative of the plaintiff's innocence." Filing 1 at 4–5. Mitchell "expect[s]" that the domestic violence charge will end in a similar fashion." Filing 1 at 5. The purpose of bringing these charges was allegedly to chill Mitchell's "Black Lives Matter" advocacy and "thwart any attempt to effectuate change in the city of Omaha." Filing 1 at 17 (¶ 20), 32 (¶ 102).

### 1. Parties

Plaintiff David Mitchell is an individual who has thrice been charged with crimes by Douglas County, Filing 1 at 4, 23 (¶ 50), who ran "as a candidate for the position of city council [sic]." Filing 1 at 23 (¶ 50). Douglas County and the City of Omaha are "political subdivision[s] of the State of Nebraska duly organized under the Constitution of Nebraska." Filing 1 at 7–8 (¶¶ 7, 9). Defendants Olson, McGee, Kilcoin, Delehant, and Kleine are lawyers with the Douglas County Attorney's office, which itself is also a named defendant. Filing 1 at 8–10 (¶ 8, 10–11). Defendants Wiley, Robbish, Dunwoody, Pearson, LeGrow, Boults, Smith, and Trosper are officers with the Omaha Police Department. Filing 1 at 10–12 (¶¶ 12–16).

### 2. Relevant Facts

As discussed above, the "gravamen" of Mitchell's claims is the existence of an intricate conspiracy by Douglas County and the City of Omaha, orchestrated by Douglas County Attorney Donald Kleine against Mitchell. Filing 1 at 3. The essence of the conspiracy is to charge Mitchell without probable cause for crimes he did not commit. The Court will detail the factual allegations surrounding each of these charges.

a.  Burglary

Mitchell was arrested for burglary on August 1, 2019, and the case was terminated shortly before trial on August 12, 2022. Filing 1 at 7 (¶ 6). Mitchell contends that there was no evidence of physical entry, a required element of burglary, and that defendant Olson, who was prosecuting the case, knew this. Filing 1 at 21–22 (¶¶ 41–42). Mitchell alleges that "Officer's [sic] Robert Wiley lied before the grand jury testimony in order to secure an arrest warrant for plaintiff David Mitchell" and "a search warrant for one of the businesses of the defendant." Filing 1 at 22 (¶¶ 43–44). "[T]hat search warrant yielded approximately 10 items out of an inventory of more than 25,000 all of which had been resold to the store by a terminated employee of the plaintiff who walked into the competing business and confessed to breaking into and robbing the location." Filing 1 at 22 (¶ 45). On August 12, 2022, defendant McGee, who had replaced defendant Olson as prosecutor, dismissed the charge. Filing 1 at 10 (¶ 11). Despite this, Mitchell alleges that defendant Officer Robbish refused to return property taken in relation to the burglary prosecution. Filing 1 at 11 (¶ 15).

b.  Sexual Assault

Mitchell alleges he was prosecuted for sexual assault after a report to law enforcement by the legal guardian of an adult woman. Filing 1 at 14 (¶ 20). Mitchell alleges that he "had consensual sexual relations with [the woman] during the summer of 2020," but the woman's guardian "believed that as [she] needed a guardian that David Mitchell was taking advantage of" her, leading the guardian to file a police report. Filing 1 at 24 (¶¶ 56–58). Mitchell appears to allege that he had previously sent messages to the woman when she was a minor "stat[ing] the sexual things that he would like to do to [her] [but] not what they had been doing." Filing 1 at 25 (¶ 62); *see also* Filing 1 at 42 (¶ 156) ("[L]aw enforcement officers were told that any mentions of sexual activity between

4

the parties referred to potential or future conduct on their part."). Mitchell further alleges that "two mandatory reporters . . . never mandatorily reported any suspected prior sexual abuse," Filing 1 at 42 (¶ 156), and one of these mandatory reporters was a coconspirator, but "not an individual acting under color of state law and is therefore not a defendant in the present lawsuit." Filing 1 at 24 (¶ 60). In addition, "the initially responding officers (Defendants Detective Christopher LeGrow, CVSA Alexis Boults, Officer Dion Smith, and Sgt. Thad Trosper) . . . did not initially find evidence of criminality." Filing 1 at 14 (¶ 20). "Notwithstanding" this, "the investigation . . . was continued by Defendant Shawn Pearson of the Omaha City Police Department." Filing 1 at 16 (¶ 20). "David Mitchell was arrested on September 15th, 2020, while attending a [sic] Omaha City Council meeting where he was running as a candidate for the position of city council [sic]." Filing 1 at 16 (¶ 20). Mitchell alleges that "this arrest was intentionally staged and orchestrated by [Defendants] to strip the petitioner of his constitutionally protected civil rights and thwart any attempt to effectuate change in the city of Omaha." Filing 1 at 17 (¶ 20).

c.   Domestic Violence

Of the three charges that have allegedly been brought against Mitchell, only this claim has not allegedly "ended in a manner indicative of the plaintiff's innocence." Filing 1 at 9 (¶ 10). Mitchell's estranged wife, "J.M.," returned to the marital home on October 30, 2022, "in response to an illness one of their children had been suffering." Filing 1 at 29 (¶¶ 83–84). Mitchell alleges that J.M. was "incredibly intoxicated" and that "he recorded hours of their conversations because of a fear that she might accuse him of some maleficence later." Filing 1 at 29 (¶¶ 85–86). Mitchell avers that he recorded as J.M. threatened his life, boasted of sexual acts she had performed with other men, attempted suicide, and vomited. Filing 1 at 29 (¶ 87). "During these hours of self-abuse and video recording David Mitchell did nothing more than document and relay the experiences

5

going on in front of him to several 3rd parties including family members and legal counsel." Filing 1 at 29 (¶ 88). J.M. left the next morning. Filing 1 at 29–30 (¶ 89). Thereafter, Mitchell turned the video over to the police and sought a protective order against J.M. Filing 1 at 30 (¶ 90). J.M. similarly sought a protective order against Mitchell, which Mitchell alleges was "[u]ltimately . . . thr[own] out." Filing 1 at 30 (¶ 91). Mitchell alleges that "the Douglas County prosecutor's office used the representation made by [J.M] to charge David Mitchell . . . with a count of Domestic Violence," Filing 1 at 30 (¶ 91), "notwithstanding the fact[s] that the initial reviewing court threw out her order of protection" and "that the Douglas County Attorney's Office has been in possession of video evidence which demonstrates the status, actions, and behaviors of both parties during a several hour period of the night in question." Filing 1 at 30 (¶ 93). Mitchell describes this prosecution as "the repeated injection of the Douglas County Attorney's office" into his and J.M.'s divorce. Filing 1 at 30–31 (¶¶ 96–97).

### B. Procedural Background

Mitchell filed his Complaint on August 1, 2023. Filing 1. The Complaint contains five claims under the U.S. Constitution and three state law claims. The constitutional claims are as follows:

COUNT I. First Amendment, "Citizen Plaintiff" theory,

COUNT II. Fourth Amendment, Unreasonable Seizure (Judicial Deception),

COUNT III. Fourth Amendment, Unreasonable Seizure of Person, (Probable Cause Arrest),

COUNT IV. Fourteenth Amendment, Due Process, (Deliberate Fabrication of Evidence)

COUNT V. Fourteenth Amendment, Due Process, (Deliberate or Reckless Suppression of Evidence)

Filing 1 at 6. The state law claims are: "COUNT VI. CIVIL CONSPIRACY, COUNT VII. MALACIOUS PROSECUTION, COUNT VIII. FALSE ARREST." Filing 1 at 6. Defendants filed the two Motions to Dismiss presently before the Court on October 20, 2023, and October 23, 2023. Filing 25; Filing 27. Mitchell failed to respond to these Motions in a timely manner, despite seeking and receiving an extension to do so. Filing 29; Filing 30. However, on February 7, 2024, Mitchell notified U.S. Magistrate Judge Jacqueline M. DeLuca that his attorney had died, Filing 36, and Judge DeLuca granted Mitchell an additional extension, Filing 37. Mitchell did not obtain the services of counsel and is now pro se. Filing 38. Mitchell filed his Briefs opposing dismissal on March 27, 2024. Filing 40; Filing 41. Defendants filed Reply Briefs on April 3, 2024. Filing 42; Filing 43.

## II. ANALYSIS

### A. Applicable Standards

#### 1. Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for a pre-answer motion to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The Eighth Circuit Court of Appeals has explained that on a Rule 12(b)(1) motion,

> The plaintiff bears "the burden of proving the existence of subject matter jurisdiction," and we may look at materials "outside the pleadings" in conducting our review. [*Herden v. United States*, 726 F.3d 1042, 1046 (8th Cir. 2013) (en banc)] (quoting *Green Acres Enters., Inc. v. United States*, 418 F.3d 852, 856 (8th Cir. 2005)). Because of the "unique nature of the jurisdictional question," *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990) (citation omitted), it is the court's duty to "decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue," *id.* at 730. As such, if the court's inquiry extends beyond the pleadings, it is not necessary to apply Rule 56 summary judgment standards. *Id.* at 729. Rather, the court may receive evidence via "any rational mode of inquiry," and the parties may "request an evidentiary hearing." *Id.* at 730 (quoting *Crawford v. United States*, 796 F.2d 924, 928 (7th Cir. 1986)). Ultimately, the court must rule upon "the jurisdictional issue [unless it] is 'so bound

up with the merits that a full trial on the merits may be necessary to resolve the issue.'" *Id.* (quoting *Crawford*, 796 F.2d at 928).

*Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019); *Am. Fam. Mut. Ins. Co. v. Vein Centers for Excellence, Inc.*, 912 F.3d 1076, 1081 (8th Cir. 2019) ("[A] motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) raises a factual challenge to the court's jurisdiction, and courts may look to evidence outside the pleadings and make factual findings." (citing *Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018)).

The *Buckler* decision suggests that a challenge to subject matter jurisdiction pursuant to Rule 12(b)(1) is always "factual," but "facial" challenges are also possible:

> In deciding a motion under Rule 12(b)(1), the district court must distinguish between a facial attack—where it looks only to the face of the pleadings—and a factual attack—where it may consider matters outside the pleadings. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir.1990). In a factual attack, the "non-moving party does not have the benefit of 12(b)(6) safeguards." *Id.* If the jurisdictional issue is "bound up" with the merits of the case, the district court may "decide whether to evaluate the evidence under the summary judgment standard." *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir.2018). This court is bound by the district court's characterization of the Rule 12(b)(1) motion. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir.2016) ("The method in which the district court resolves a Rule 12(b)(1) motion—that is, whether the district court treats the motion as a facial attack or a factual attack—obliges us to follow the same approach.").

*Croyle by & through Croyle v. United States*, 908 F.3d 377, 380–81 (8th Cir. 2018).

In this case, Defendants have not submitted any supplemental material for the Court's consideration. Therefore, the Court concludes that Defendants' challenge to subject matter jurisdiction is facial. *See generally* Filing 31. Under these circumstances, Mitchell is entitled to Rule 12(b)(6) "safeguards." *Croyle*, 908 F.3d at 380. Those "safeguards" are detailed in the following section.

### 2. Rule 12(b)(6)

The typical grounds for Rule 12(b)(6) motions are the insufficiency of the factual allegations offered to state claims. To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Nevertheless, "'threadbare recitals of the elements of a cause of action' cannot survive a [Rule 12(b)(6)] motion to dismiss." *Du Bois v. Bd. of Regents of Univ. of Minnesota*, 987 F.3d 1199, 1205 (8th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, as the Eighth Circuit Court of Appeals has explained, "A claim survives a Rule 12(b)(6) motion to dismiss only if the complaint's nonconclusory allegations, accepted as true, make it not just 'conceivable' but 'plausible' that the defendant is liable." *Mitchell v. Kirchmeier*, 28 F.4th 888, 895 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 680-83). To put it another way, a court "must determine whether a plaintiff's complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Far. E. Aluminum Works Co.*, 27 F.4th at 1364 (quoting *Braden*, 588 F.3d at 594). Thus, "[a] claim is plausible when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Bushner*, 33 F.4th at 499 (quoting *Iqbal*, 556 U.S. at 678). In contrast, "'[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility." *Id.* (internal quotation marks and citations omitted). The Eighth Circuit Court of Appeals has cautioned that "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594.

In ruling on a Rule 12(b)(6) motion, a court must "accept 'the facts alleged in the complaint as true and draw[ ] all reasonable inferences in favor of the nonmovant.'" *Bauer v. AGA Serv. Co.*,

25 F.4th 587, 589 (8th Cir. 2022) (quoting *Pietoso, Inc. v. Republic Servs., Inc.*, 4 F.4th 620, 622 (8th Cir. 2021)). On the other hand, "[m]ere conclusory statements and factual allegations lacking enough specificity to raise a right to relief above the speculative level are insufficient to support a reasonable inference that the defendant is liable." *Richardson v. BNSF Ry. Co.*, 2 F.4th 1063, 1068 (8th Cir. 2021) (internal quotation marks and citations omitted). A court also need not accept a pleader's "legal conclusions drawn from the facts." *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 755 (8th Cir. 2021).

Rule 12(b)(6) also permits dismissal when a claim is not cognizable under applicable law. *See, e.g., Couzens v. Donohue*, 854 F.3d 508, 517 (8th Cir. 2017) (dismissal was appropriate where Missouri did not recognize a claim for false light invasion of privacy); *Thomas v. Bd. of Regents of Univ. of Nebraska*, No. 4:20CV3081, 2022 WL 1491102, at *18 (D. Neb. May 11, 2022) (agreeing with defendant that the plaintiffs had failed to state a claim, because a disparate-impact claim is not cognizable under the Equal Protection Clause); *Freeney v. Galvin*, No. 8:19CV557, 2020 WL 229996, at *2 (D. Neb. Jan. 15, 2020) (finding the plaintiff failed to state a § 1983 claim against the manager of his private place of employment because such a claim is not cognizable where a private person is not a state actor or engaged in joint action with the state or its agents). In such cases, the plaintiff failed to state a claim that was legally cognizable as opposed to factually plausible.

### B. Preliminary Matters

The Court addresses four preliminary matters. First, Defendants characterize their Motions as Motions to Dismiss under Rule 12(b)(6) for failure to state a claim. *See* Filing 25; Filing 27. However, in one of their Briefs, Defendants argue, "The absence of subject matter jurisdiction of Plaintiff's state law claims in Counts VI, VII, and VIII requires dismissal. *See* Fed. R. Civ. P.

12(b)(1)." Filing 26 at 32. "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." *Ashcroft v. Iqbal*, 556 U.S. 662, 671, 129 S.Ct. 1937, 1945 (2009) (internal citation omitted). "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Therefore, despite Defendants' decision to bring their Motion only under Rule 12(b)(6), the Court will nevertheless consider subject matter jurisdiction.

Second, Mitchell included as defendants "Unknown Members of Douglas County Sheriff's Office" and "Unknown [Deputy Douglas County Attorneys (DDCAs)]." Filing 1. The Court dismisses these unknown defendants along with the known defendants. *See Phelps v. U.S. Fed. Gov't*, 15 F.3d 735, 739 (8th Cir. 1994) (holding that "the district court did not err by dismissing the 'unknown defendants' without prejudice" where the district court found 'no basis for identifying these individuals'"). Mitchell does not allege any wrongdoing by the unnamed defendants that is separate from the allegations against the named defendants. Because Mitchell failed to state a claim against any named defendants on the facts contained in his Complaint, the Court similarly dismisses the unnamed defendants. *See Lee v. Airgas Mid-S., Inc.*, 793 F.3d 894, 899 (8th Cir. 2015) (holding that because "the unnamed defendants were irrelevant to the merits of [the plaintiff's] case, [ ] they therefore were properly dismissed, without prejudice, with the remainder of the case").

Third, although Mitchell had counsel when he filed the Complaint, he is now pro se. Pleading standards are more liberal for pro-se plaintiffs. The Eighth Circuit has explained, "A pro se complaint must be liberally construed, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), and 'pro se litigants are held to a lesser pleading standard than other parties[,]' *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008)." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004). In

11

addition, "it is the facts alleged in a complaint, and not the legal theories, that state a claim," and "federal courts must examine a complaint to determine if the allegations set forth a claim for relief." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) (citations omitted). Accordingly, courts must "decide whether [the pro se plaintiff] has pleaded sufficient facts in his amended complaint to state a claim under any legal theory. If he has, his amended complaint should not [be] dismissed." *Id.* Defendants argue that liberal pleading standards do not apply because his Complaint was not filed pro se. Filing 42 at 1. The Court agrees and will not liberally construe Mitchell's Complaint because it was not filed pro se. The Court further rejects Mitchell's request to "adopt all case law and facts in [his] brief" opposing dismissal. Filing 40 at 1.

Fourth, Mitchell points out that one of Defendants' Briefs supporting dismissal failed to comply with NECivR 7.1(d)(3) because Defendants failed to include a certificate of compliance with the 13,000 word limit. Filing 41 at 1; *see also* Filing 28 (Defendants' Brief with missing certificate). NECivR 7.1(d)(4) provides, "Any brief not in compliance with this subsection may be stricken, with or without further notice, in the sole discretion of the Court." The Court declines to strike Defendants' Brief for noncompliance with NECivR 7.1(d)(3), especially considering that Defendants' Brief is well within the word limit provided for by NECivR 7.1(d)(1).

### C. Sovereign Immunity Bars Mitchell's State Law Claims

Defendants seek dismissal of Mitchell's "state law claims in Counts VI, VII, and VIII," arguing that "Douglas County has sovereign immunity for those claims." Filing 26 at 32. Count VI is for "Civil Conspiracy," and the conspiracy alleged is that defendant Klein conspired with the other named defendants to maliciously prosecute Mitchell for burglary, sexual assault, and domestic violence. Filing 1 at 40–44 (¶¶ 142–159). Counts VII and VIII are for "malicious

12

prosecution" and "false arrest" based on the same facts as Count VI. Filing 1 at 44–48 (¶¶ 160–183). Despite his frequent references to federal law, Mitchell alleges in his complaint that Counts VI, VII, and VIII are "state law claims," Filing 1 at 6, and the Court will consider them as such.

Defendants contend that the Court lacks subject matter jurisdiction over these claims because the underlying torts are "exempted . . . from the waiver of sovereign immunity in the Political Subdivisions Tort Claims Act ('PSTCA'), and when one of these exemptions applies, there is a lack of subject matter jurisdiction." Filing 26 at 31 (citing Neb. Rev. Stat. § 13-910(7); Edwards v. Douglas County, 953 N.W.2d 744, 750 (2021)). Nebraska Revised Statute § 13-910(7) provides, "The Political Subdivisions Tort Claims Act . . . shall not apply to . . . [a]ny claim arising out of assault, battery, false arrest, false imprisonment, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights[.]" Defendants argue that Mitchell's "Counts VII and VIII plainly allege malicious prosecution and false arrest" and are thus not covered by any waiver of sovereign immunity. Filing 26 at 31. Defendants further argue, "This Court also lacks subject matter jurisdiction as to Plaintiff's Count VI for civil conspiracy to the extent he argues it under state law because the underlying torts are exempt from the PSTCA's waiver of sovereign immunity." Filing 26 at 31–32. Defendants explain,

> In Nebraska, "[a] civil conspiracy is a combination of two or more persons to accomplish by concerted action an unlawful or oppressive object, or a lawful object by unlawful or oppressive means." Four R Cattle Co. v. Mullins, 253 Neb. 133, 140, 570 N.W.2d 813, 818 (1997). Civil conspiracy is not a standalone state law claim; rather it is "sustainable only after an underlying tort claim has been established." Bojanski v. Foley, 18 Neb. App. 929, 949–50, 798 N.W.2d 134, 150 (2011) (quoting McCarthy v. Kleindienst, 741 F.2d 1406, 1413 n. 7 (D.C.Cir.1984); accord Mizokami Bros. v. Mobay Chem. Corp., 660 F.2d 712, 718 n. 8 (8th Cir.1981); Rotermund v. United States Steel Corp., 474 F.2d 1139, 1145 (8th Cir.1973). Here, the underlying state law tort claims are malicious prosecution and false arrest, neither of which this Court has subject matter jurisdiction over because of sovereign immunity. Thus, "if sovereign immunity has not been waived for [malicious prosecution and false arrest] [...], such non-waiver logically still prevails

13

even though it is alleged that two or more government employees acted in concert." *Bojanski*, 18 Neb. App. at 949.

Filing 26 at 32.

In response, Mitchell states,

The city defense also alleges that the complaint "explicitly styles the claims asserted in Count VI of the Complaint (Doc. #1) as a state law based tort claim". Your honor, once again we are in federal court asserting federal violations in this complaint. The complaint in its entirety has always "explicitly styled" a federal complaint because we are in a federal jurisdiction.

Filing 41 at 25. The Court rejects Mitchell's arguments, as federal courts can adjudicate state law claims, *see* U.S. Const. art. III, § 2; 28 U.S.C. § 1332; 28 U.S.C. § 1367, and apply state law to such claims, *N. Oil & Gas, Inc. v. EOG Res., Inc.*, 74 F.4th 899, 904 (8th Cir. 2023) ("Under [*Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)], our task is to determine the law of [the forum state] as established by applicable decisions of its Supreme Court."). Thus, Mitchell's argument that federal law applies to his state law claims is wholly meritless.

"Where [a state] has not waived sovereign immunity . . . the district court lacks subject matter jurisdiction to hear the case." *Hart v. United States*, 630 F.3d 1085, 1088 (8th Cir. 2011) (citing *Green Acres Enters. v. United States*, 418 F.3d 852, 857 (8th Cir.2005); *Dykstra v. United States*, 140 F.3d 791, 795 (8th Cir.1998)). In Nebraska, "[t]he state may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought." Neb. Const. art. V, § 22. The Nebraska PSTCA has an "'intentional tort' exemption" which "exempts from the waiver of sovereign immunity "[a]ny claim arising out of assault, battery, false arrest, false imprisonment, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." *Edwards*, 953 N.W.2d at 750.

Plainly, Counts VII and VIII are barred by Neb. Rev. Stat. § 13-910(7), which explicitly exempts claims arising out of false arrest and malicious prosecution from the waiver of sovereign immunity.[1] The question is whether Count VI, conspiring to commit those torts, is similarly barred, although conspiracy claims themselves are not barred by Neb. Rev. Stat. § 13-910(7). The Court agrees with Defendants that Count VI is also barred by sovereign immunity. In *Bojanski v. Foley*, 798 N.W.2d 134 (2011), the Nebraska Court of Appeals affirmed the lower court's dismissal of a civil conspiracy claim. The *Bojanski* court reasoned that "if sovereign immunity has not been waived for [the tort that defendants allegedly conspired to commit], . . . such non-waiver logically still prevails even though it is alleged that two or more government employees acted in concert." *Id.* at 150. Holding otherwise "would eviscerate the protection from suits for [the tort] provided for in such statute." *Id.* (citation omitted). Because Mitchell alleges conspiracy to commit torts exempted from the waiver of sovereign immunity, Count VI is similarly barred by sovereign immunity. Thus, because sovereign immunity for these claims exists, the Court lacks subject matter jurisdiction. *See Hart*, 630 F.3d at 1088. Accordingly, Counts VI, VII, and VIII are dismissed for lack of subject matter jurisdiction.[2]

---

[1] Mitchell cites *Thompson v. Clark*, 596 U.S. 36, 39 (2022), which held that "[t]o demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." That citation is inapt. Mitchell's malicious prosecution claim is under state law. Filing 1 at 40 (¶ 141). Moreover, Mitchell's Fourth Amendment seizure claims are for "Judicial Deception," Filing 1 at 33, "Probable Cause Arrest," Filing 1 at 34, and "Deliberate Fabrication of Evidence," Filing 1 at 37. Mitchell did not plead a malicious prosecution claim under 42 U.S.C. § 1983, and this is not a pro se case where the Court must determine whether the plaintiff "has pleaded sufficient facts in his [ ] complaint to state a claim under any legal theory." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014).

[2] Defendants Pearson, LeGrow, Boults, Smith, and Trosper are only included in Count VI. *See* Filing 1 at 40. Because Count VI is dismissed, these defendants are also dismissed.

15

### D. Mitchell Failed to State a *Monell* Claim Against Douglas County

Douglas County[3] is named as a defendant in Counts I–V, all of which assert violations of the U.S. Constitution. Defendants contend that Mitchell failed to state a claim for municipal liability against Douglas County for two reasons: "First, Kleine is not a final policymaker for Douglas County for purposes of *Monell* liability[;] Second, Plaintiff does not plead more than a threadbare claim for a *Monell* policy or custom." Filing 26 at 12. The Court agrees with Defendants.

The Eighth Circuit has stated, that under *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), "[l]iability for a constitutional violation will attach to a municipality only if the violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise an official or employee." *Bolderson v. City of Wentzville*, 840 F.3d 982, 985 (8th Cir. 2016). Mitchell has not alleged anything that resembles a "failure to train" theory, so the Court will only consider whether Monell liability attaches under the official policy or unofficial custom theories. The Court will consider each theory in turn.

#### 1. The "Official Policy" Theory of Municipal Liability

Mitchell alleges, "As part of Kleine's responsibilities as head of the DCAO defendant Kleine is the final policymaker responsible for: felony criminal prosecution(s) (such as this case) and misdemeanor domestic violence prosecutions." Filing 1 at 8 (¶ 8). Mitchell does not contend that any official policies themselves "violate[ ] federal law, or direct[ ] an employee to do so." *Doe v. Fort Zumwalt R-II Sch. Dist.*, 920 F.3d 1184, 1189 (8th Cir. 2019) (quoting *Bd. of the Cnty.*

---

[3] Mitchell brought claims against Douglas County employees in the official capacities. Filing 1. The claims against public officials "in [their] official capacit[ies], are 'actually . . . against the entity for which the official is an agent.'" *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006).

*Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Rather, Mitchell alleges that defendant Klein was personally involved "in the formation, implementation, or enforcement of the alleged policy," *Elder*, 54 F.4th at 1066, as "the final policymaker responsible for[ ] felony criminal prosecution(s) (such as this case) and misdemeanor domestic violence prosecutions." Filing 1 at 8 (¶ 8).

Defendants point out, "The Legislature imposes upon county attorneys the duty to prosecute criminal violations, expressly directing all county attorneys 'to appear in the several courts of the county and prosecute the appropriate criminal proceeding on behalf of the state and county.'" Filing 26 at 12 (quoting Neb. Rev. Stat. § 23-1201). Moreover, "[a]ll process shall run in the name of 'The State of Nebraska,' and all prosecutions shall be carried on in the name of 'The State of Nebraska.'" Neb. Const. Art. V, Sec. 24. Defendants also note that "the Nebraska Attorney General has supervisory authority over county attorneys as it has 'the general control and supervision of all actions and legal proceedings in which the State of Nebraska may be a party or may be interested.'" Filing 26 at 12 (quoting Neb. Rev. Stat. § 84-202).

Mitchell's arguments in response are unavailing. He contends that defendant Kleine was a policymaker when he "had his deputies punish [Mitchell] for using [his] [F]irst [A]mendment right by trying to force [Mitchell's] attorney to silence [him] on multiple occasions." Filing 40 at 25. It is far from clear how Mitchell's criminal defense attorney could be a prosecutor's "deputy." Mitchell further contends,

> Even though the state law does not "vest" Kleine with final policy making authority for Douglas County, he still created unconstitutional policies anyways against the state. When he created these policies he did so not in the name of the state, since the state of Nebraska doesn't grant him such authority, he did it on his own accord which makes Douglas County liable. Kleine was not acting on behalf of the State of Nebraska when he intentionally violated my rights.

17

Filing 40 at 25. The "unconstitutional polic[y]" at issue here appears to be Kleine's alleged decision "to prosecute individuals [like Mitchell] even when he and his deputies knew the element did not meet the charge." Filing 40 at 25. Mitchell's argument that Kleine was *not* acting on the Government's behalf of course belies Mitchell's allegation that Kleine was an official policymaker.

Regarding the official policy theory, the Eighth Circuit has stated, "Where a municipal policy or custom 'itself violates federal law, or directs an employee to do so, resolving [ ] issues of fault and causation is straightforward.'" *Fort Zumwalt R-II Sch. Dist.*, 920 F.3d at 1189. Conversely, "where the plaintiff claims that municipal action lawful on its face caused an employee to inflict constitutional injury, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* (citation and internal quotation marks omitted). "A policy can be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." *Dahl v. Rice Cnty.*, 621 F.3d 740, 743 (8th Cir. 2010). But "liability attaches only where the decision-maker possesses final authority to establish municipal policy with respect to the action ordered." *Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 946 (8th Cir. 2017) (citation omitted). Moreover, "the fact that 'a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.'" *Bolderson*, 840 F.3d at 985–986 (citation omitted). Thus, the Court must determine whether Mitchell has plausibly alleged that defendant Kleine is "the decision-maker [that] possesses final authority to establish municipal policy with respect to the action ordered." *Soltesz*, 847 F.3d at 946.

The Court concludes that Mitchell's allegations do not satisfy the "rigorous standards of culpability and causation" applicable here "to ensure that the municipality is not held liable solely for the actions of its employee." *Fort Zumwalt R-II Sch. Dist.*, 920 F.3d at 1189. Even assuming that defendant Kleine was responsible for Mitchell's prosecutions, the decision to prosecute him was not a "decision" from which a "policy can be inferred." *Dahl*, 621 F.3d at 740. Instead, the "policy" of imposing the duty and authority of prosecution upon county attorneys comes from the legislature. *See* Neb. Rev. Stat. § 23-1201. Therefore, even if defendant Kleine "has discretion in" the decision to prosecute Mitchell, this does "not, without more, give rise to municipal liability based on an exercise of that discretion.'" *Bolderson*, 840 F.3d at 985–986 (citation omitted).

### 2. The "Unofficial Custom" Theory of Municipal Liability

In a discussion about Mitchell's problems with his ex-wife and their divorce that led to his domestic violence charge, Mitchell alleges, "Counsel for the Plaintiff believes the repeated injection of the Douglas County Attorney's Office, the city of Omaha police department, and their agents and proxies [into the relationship between Mitchell and his ex-wife] is part of a custom, pattern, and / or practice designed to deny David Mitchell his constitutionally protected civil rights." Filing 1 at 31. Defendants contend that this argument fails because "[t]here are no facts showing a widespread pattern of unconstitutional misconduct" and Mitchell failed to "explain how prosecutorial actions in criminal cases influencing his private divorce violated his civil rights." Filing 26 at 16. Mitchell offers a conclusory argument in his Brief opposing dismissal, stating,

> The county defense asserts in their brief that the complaint does not explain the theories of municipal liability in relation to a Monell claim. I would argue that the complaint does explain these theories of municipal liability and the elements of a Monell claim are met. The county defense makes the same redundant claims and assertions that they have mentioned in their previous section of their brief. In return I would reassert would [sic] I have already written in this brief and not waste the courts [sic] time arguing the same issue in this paragraph. The Monell claim in the

complaint is enough to establish a viable claim for relief and the court should not dismiss this claim.

Filing 40 at 26. The Court observes that Mitchell did not make any prior or subsequent arguments regarding an unofficial custom. *See generally* Filing 40. The Court agrees with Defendants.

The Eighth Circuit has explained the requirements for asserting a *Monell* claim based on an unofficial custom, as follows:

> [A] plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was a moving force behind the constitutional violation." *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014).

*Corwin v. City of Indep., MO.*, 829 F.3d 695, 700 (8th Cir. 2016). The Eighth Circuit has elaborated on the "misconduct" element, as follows:

> To trigger municipal liability based on unofficial municipal custom, the custom must be so pervasive among non-policymaking employees of the municipality that it effectively has the force of law. *Ware v. Jackson Cnty., Mo.*, 150 F.3d 873, 880 (8th Cir. 1998). The custom must be demonstrated by a continuing, widespread, and persistent pattern of unconstitutional misconduct. *Id.* An unconstitutional custom or usage cannot arise from a single act. *McGautha v. Jackson Cnty., Mo., Collections Dep't*, 36 F.3d 53, 57 (8th Cir. 1994).

*Bolderson*, 840 F.3d at 986.

Mitchell's—or rather, his former counsel's—professed "belie[f] [that] the repeated injection of the Douglas County Attorney's Office, the city of Omaha police department, and their agents and proxies [into the relationship between Mitchell and his ex-wife] is part of a custom, pattern, and / or practice designed to deny David Mitchell his constitutionally protected civil rights," Filing 1 at 31, is conclusory and cannot support a *Monell* claim. There is a total dearth of factual allegations regarding any particular instances of "unconstitutional misconduct" by any

20

defendant, never mind "a continuing, widespread, persistent pattern" of it. *Corwin*, 829 F.3d at 700. The allegation in the "domestic violence" section of the complaint that comes closest to suggesting misconduct by a defendant is Mitchell's assertion that,

> the Douglas County prosecutor's office used the representation made by Jessica Mitchell to charge David Mitchell under CR 23-4201 (Domestic Violence) with a count of Domestic Violence . . . notwithstanding the fact that the initial reviewing court threw out her order of protection . . . [and] also notwithstanding the fact that the Douglas County Attorney's Office has been in possession of video evidence which demonstrates the status, actions, and behaviors of both parties during a several hour period of the night in question.

Filing 1 at 30 (¶¶ 91–93). Even if this allegation could indicate "unconstitutional conduct," which the Court need not decide, it is a single act, and "[a]n unconstitutional custom or usage cannot arise from a single act." *McGautha*, 36 F.3d at 57. Accordingly, Mitchell has not alleged an "unofficial policy" theory of municipal liability. Therefore, because Mitchell has failed to state facts to establish municipal liability against Douglas County under *Monell*, the claims against Douglas County are dismissed.

### E.  Mitchell Also Failed to State a *Monell* Claim Against the City of Omaha

Defendants separately but similarly argue that Mitchell has not established municipal liability against the city of Omaha. Filing 28 at 5. Defendants contend, "Although the Plaintiff has filed a[ ] [ ] Complaint consisting of 48 pages and 183 individually numbered paragraphs, he has failed to allege facts sufficient to describe a specific policy, practice, or custom of the City of Omaha that is responsible for the constitutional injuries he alleges." Filing 28 at 6. Because the Court found above that Mitchell failed to allege *Monell* liability, the claims against the City of Omaha are likewise dismissed.

### F.  Defendant Douglas County Attorney's Office Is Not Amenable to Suit

Mitchell alleged in his complaint that "pursuant to the rationale of *Parsons v. McCann*, [138 F.Supp.3d 1086 (D. Neb. 2015)], city police departments and county offices are agencies, departments, or subdivisions of city government and therefore not separately subject to suit." Filing 1 at 8 (¶ 8). The Douglas County Attorney's Office is plainly a "subdivision[ ] of city government and therefore not separately subject to suit." Filing 1 at 8 (¶ 8); see also *Parsons*, 138 F.Supp.3d at 1097–1098 ("Each county in Nebraska may sue and be sued in its own name, Neb.Rev.Stat. § 23–101, but the same is not true of county offices or departments." (emphasis omitted)). Thus, by Mitchell's own admission, the Douglas County Attorney's Office is not a viable defendant, and all claims against it are dismissed.

### G.  Douglas County Attorneys Are Entitled to Absolute Immunity

Defendants contend that defendants "Olson, McGree [sic], Kilcoin, Delehant, and Kleine are entitled to absolute immunity or qualified immunity or should be dismissed." Filing 26 at 3 (capitalization omitted). Mitchell disagrees, arguing at considerable length that these defendants are not entitled to absolute or qualified immunity. Filing 40 at 15–24. Because the Court agrees that the named Douglas County Attorneys are entitled to absolute immunity, the Court does not separately consider whether they would be entitled to qualified immunity.

"Immunity is absolute only when the prosecutor performs distinctively prosecutorial functions." *McGhee v. Pottawattamie Cnty., Iowa*, 547 F.3d 922, 933 (8th Cir. 2008) (citation omitted). "[P]rosecutorial functions that are intimately associated with the judicial process[,] . . . even if those are actions are patently improper[,] are immunized." *Winslow v. Smith*, 696 F.3d 716, 739 (8th Cir. 2012) (quoting *Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir.2006)). "However,

22

purely administrative or investigative actions that do not relate to the initiation of a prosecution do not qualify for absolute immunity." *Id.* "The question of whether absolute or qualified immunity applies depends on whether the prosecutor's acts were prosecutorial, investigatory or administrative in nature." *Id.* The Eighth Circuit has demarcated "prosecutorial" actions from "investigatory or administrative" actions, as follows:

> If the prosecutor is acting as advocate for the state in a criminal prosecution, then the prosecutor is entitled to absolute immunity. *Buckley v. Fitzsimmons,* 509 U.S. 259, ——, 113 S.Ct. 2606, 2615, 125 L.Ed.2d 209 (1993). Absolute immunity covers prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process. *Id.; Imbler v. Pachtman,* 424 U.S. 409, 430–31 n. 33, 96 S.Ct. 984, 995 n. 33, 47 L.Ed.2d 128 (1976). In contrast, a prosecutor is entitled only to qualified immunity when he pursues actions in an "investigatory" or "administrative" capacity. *Buckley,* 509 U.S. at ——, 113 S.Ct. at 2616. In determining whether particular actions of government officials fit within the absolute or qualified immunity standard, the Supreme Court has adopted a functional approach that looks to "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White,* 484 U.S. 219, 229, 108 S.Ct. 538, 545, 98 L.Ed.2d 555 (1987) (finding state court judge does not have absolute immunity from damages suit for his administrative decision to demote and dismiss a court employee); *see also Buckley,* 509 U.S. at ——, 113 S.Ct. at 2618 (holding prosecutor's comments to the media have no functional tie to the judicial process because they do not involve presentation of state's case in court or initiation of prosecution); *Burns v. Reed,* 500 U.S. 478, 494, 111 S.Ct. 1934, 1943–44, 114 L.Ed.2d 547 (1991) (finding absolute immunity from liability for damages under § 1983 does not apply to state prosecutor's giving of legal advice to police but does extend to his participating in probable cause hearing); *Imbler,* 424 U.S. at 431, 96 S.Ct. at 995–96 (holding prosecutor is absolutely immune from activity of initiating prosecution or for actions taken in presenting state's case).

*Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266–67 (8th Cir. 1996). Thus, the Court must determine whether "the nature of the function[s] performed" by the Douglas County Attorneys are consistent with prosecutorial or investigative/administrative actions. *Forrester*, 484 U.S. at 228. The Court will consider each of the Douglas County Attorneys' entitlement to absolute immunity in turn. Mitchell makes several arguments against the Douglas County Attorneys' entitlement to

absolute immunity, but because he does not argue that he alleged any defendant acted in an investigative or administrative function, there is scant reason to reproduce his arguments here.

### 1.  Olson

Defendants argue that "Olson's actions, such [as] his professional evaluation of evidence assembled by police and decision to seek an indictment, are entitled to protections of absolute immunity." Filing 26 at 5. In the Complaint, Mitchell alleged,

> Defendant Gary Olson is a Deputy Douglas County Attorney and conspirator to violate the civil rights of the plaintiff David Mitchell. As detailed later in this complaint, during the pendency of this criminal case (which ran from August 1, 2019–August 12, 2022), Defendant Olson was contacted by criminal defense attorney Spencer Werth who pointed out that there [was] a failure as to an essential element of the offense charged, "burglary". This was because there was no evidence anywhere in any report, document, interview, video, recording, or even an uncorroborated allegation of David Mitchell physically entering any property. Notwithstanding this failure of probable cause, which was directly brought to the attention of Defendant Olson, the doomed prosecution persisted. This case was relegated to a nonelected matter upon the filing of case CR 20-3674 (Sexual Assualt [sic]) on September 15, 2020. CR 20-3674 was ended in a manner indicative of the plaintiff's innocence on October 21, 2021. The malicious prosecution on the part of Defendant Olson, continued [sic] ultimately left the [Douglas County Attorney's Office (DCAO)] on April 29, 2022, to assume the position of County Attorney for York County. The civil conspiracy to violate the rights of the David Mitchell continues to this day, as there has been no overt withdrawal from the conspiracy, and inactivity on the part of a coconspirator is not enough.

Filing 1 at 8–9 (¶ 10).

The Court concludes that Mitchell alleged that defendant Olson's purported misconduct was of a prosecutorial nature. The thrust of the allegations against Olson is that he continued to prosecute Mitchell even after he was notified that Mitchell's counsel believed there was not probable cause to charge Mitchell with burglary. Filing 1 at 8–9 (¶ 10). There are no allegations that Olson engaged in any investigative or administrative functions. *Forrester*, 484 U.S. at 228. Accordingly, even if Olson's actions were "patently improper"—and the Court makes no such

determination—he is entitled to absolute immunity. *Winslow v. Smith*, 696 F.3d at 739. The claims against defendant Olson are dismissed.

> ### 2. *McGee*

Defendants argue, "There is simply not enough against [defendant McGee] to survive a motion to dismiss or overcome his absolute prosecutorial immunity." Filing 26 at 6. In the Complaint, Mitchell alleged,

> 11.    Defendant Patrick C. McGee is a [Deputy Douglas County Attorney (DDCA)] and conspirator to violate the civil rights of the plaintiff David Mitchell. McGee took over the prosecution of case CR 19-3881 as of April 29th, 2022. At all times relevant to this proceeding, McGee had access to all evidence, reports, communications, videos, and allegations made against David Mitchell. It is reasonable to infer that he either knew or should have known of the communications between Spencer Werth and Gary Olson regarding the failure of an essential element of the prosecution, "physical entry".
>
> a.    Nonetheless, an additional action on the part of McGee demonstrating his willful, wanton, apathy, and actual malice towards David Mitchell is evidenced when executing the order to dismiss all charges of his malicious prosecution (on August 12, 2022) McGee did so in the name of a DDCA that had not been a part of that office in 7 months. On information and belief, the order dismissing all charges was done without the knowledge, permission, or consent or Defendant Olson.

Filing 1 at 9–10 (¶ 11).

Mitchell alleges additional facts related to McGee in his Brief opposing dismissal, *see* Filing 40 at 18–19, but the Court only considers the facts in the Complaint. *See Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) ("While Glick presented additional facts in his oppositions to the motions to dismiss and now presents additional facts on appeal, those factual allegations were not included in his amended complaint and, thus, cannot be considered on a motion to dismiss."). From the factual allegations in the Complaint, it appears that the action taken by McGee was dismissing the burglary charge against Mitchell and the purported impropriety was "d[oing] so in the name of a DDCA that had not been a part of the office in 7 months," presumably

defendant Olson. Plainly, dismissing a case is performing a prosecutorial function. Although the Court doubts these sparse factual allegations could suffice to state a claim, McGee is entitled to absolute immunity in the absence of any allegations that McGee engaged in any investigative or administrative functions. *Forrester*, 484 U.S. at 228. The claims against McGee are dismissed.

     *3.  Kilcoin and Delehant*

Defendants contend that Kilcoin's and Delehant's "decision to seek an indictment [for statutory rape] is entitled to protections of absolute immunity." Filing 26 at 9. Mitchell's allegations regarding Kilcoin and Delehant are as follows:

> On information and belief, Defendant Kleine pursued a civil conspiracy in concert with DCA's [sic] Kati Kilcoin and Dara Delehant by maliciously prosecuting David Mitchell for statutory rape. This was because any such charge on that basis was unsupported by probable cause and was never even reported by either of the two mandatory reporters (Joe South and Jace Schraeder) who would have become aware of it.

> . . .

> [D]efendant Kleine deprived him of his rights under the First Amendment to the Constitution when conspiring to arrest the plaintiff complete with Defendant Kati Kilcoin, Defendant Dara Delehant, and unknown members of the Douglas County Sheriff's Department at a City Council meeting on September 15, 2020.

Filing 1 at 17 (¶ 20); 31 (¶ 100). Again, the basis for Mitchell's claims against Kilcoin and Delehant are prosecutorial and not administrative or investigative. *Forrester*, 484 U.S. at 228. Mitchell also alleges a September 2020 meeting where defendants "conspir[ed] to arrest" Mitchell. Filing 1 at 17 (¶ 20). This alleged action strikes the Court as "the initiation and pursuit of a criminal prosecution," which is covered by absolute immunity. *Buckley*, 509 U.S. at 272. Therefore, the claims against Kilcoin and Delehant are dismissed.

*4.   Kleine*

Defendants argue that defendant Kleine also has absolute immunity. Filing 26 at 10.

Mitchell stated in his Complaint,

> The overall gravamen of this complaint is there has been an ongoing civil conspiracy by Douglas County, specifically through Douglas County Attorney Donald Kleine, against the plaintiff David Mitchell, since August 1, 2019. This ongoing civil conspiracy has been the carried out at the direction of Defendant Kleine, by individually named defendant DCAs and LEOs who at all times relevant to this case were operating under color of state law, whom conspired together and with others, and reached a mutual understanding to undertake a course of conduct that violated the Plaintiff's civil rights."

Filing 1 at 3. Mitchell alleges, "The Douglas County Attorney's Office [is] under the direct control and supervision of Defendant Kleine." Filing 1 at 20 (¶ 32). Other material allegations against defendant Kleine are as follows:

> On information and belief, and as supported [by] video in the possession of plaintiff on June 29, 2020, 5:37 p.m., Defendant Kleine addressed plaintiff David Mitchell outside of his house and referred to their [sic] being "a problem with the case against him."
>
> . . .
>
> Defendant Kleine . . . [i]ndividually knew this plaintiff [and] [w]as aware of the pending criminal matters of this plaintiff[.]
>
> . . .
>
> On information and belief, Defendant Kleine conspired with the Unknown members of the Douglas County Sheriff's Department that arrested David Mitchell on September 15, 2020, at the city council meeting.
>
> . . .
>
> On March 29, 2023, unknown members of the Douglas County Sheriff's Office arrested David Mitchell under case # Cr 23-4201 for the charge of domestic violence arising from the events of November 11, 2022. The arrest was unsupported by probable cause and was directly contradicted by reliable, sworn, and attested to evidence in the possession of defendants Kleine, unknown DDCA(s), and unknown members of the Douglas County Sheriff's Office.

27

Filing 1 at 15 (¶ 20), 18 (¶ 20), 20–21 (¶ 34). Mitchell's other "allegations" are conclusory, *Richardson*, 2 F.4th at 1068, and therefore not considered. *See, e.g.*, Filing 1 at 33 (¶ 105) ("On information and belief, David Mitchell has shown it is a reasonable inference that as part of his ongoing civil conspiracy Defendant Kleine encouraged, solicited, ratified, or endorsed the wholesale fabrication of testimony regarding the plaintiff's physical entry into the location allegedly burgled.").

The Court concludes that defendant Kleine is also entitled to absolute immunity. The substance of Mitchell's claim against Kleine is that Kleine "conspired" with other County Attorneys to prosecute him. The Eighth Circuit has stated that "a prosecutor is absolutely immune from a civil conspiracy charge when his alleged participation in the conspiracy consists of otherwise immune acts." *Reasonover v. St. Louis Cnty., Mo.*, 447 F.3d 569, 580 (8th Cir. 2006) (citing *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1282 (11th Cir. 2002)). Because all of Kleine's alleged actions relate to Mitchell's prosecution, Kleine is absolutely immune from Mitchell's civil conspiracy charge. The claims against Kleine, like the claims against the other Douglas County Attorneys, are dismissed.

### H. Defendant Wiley Is Entitled to Absolute Immunity as a Testifying Witness

Defendants also contend that "Officer Robert Wiley is entitled to absolute immunity for his participation as a witness and governmental official in a judicial proceeding." Filing 28 at 3. Mitchell alleged that "Officer's [sic] Robert Wiley lied before the grand jury testimony in order to secure an arrest warrant for plaintiff David Mitchell" and "to secure a search warrant for one of the businesses of the defendant." Filing 1 at 22 (¶¶ 43–44). Officer Wiley allegedly testified "to the existence of video showing David Mitchell physically entering the location that was burgled,"

which Mitchell alleges was "an outright fabrication of evidence intended to mislead the judiciary."

Filing 1 at 10 (¶ 13).

> In response, Mitchell argues,
>
> The city defendants have constantly asserted in their brief that Detective Robert Wiley is entitled absolute immunity since he was a witness in a criminal proceeding. Your honor this is the furthest from the truth and I will explain. The most obvious flaw in their assertion is that EVERY police detective is considered a witness to the case that they investigate. Simply investigating a crime and furnishing an affidavit of criminal complaint to the County attorneys [sic] office does not automatically grant that officer absolute immunity. If this was the case every officer who comes in contact with the complaining party in a 1983 lawsuit should be granted absolute immunity since they are now considered a witness by the defense [sic] logic. Additionally, this would create a significate loophole in civilians constitutional rights if all an officer has to do is either testify before a grand jury or at a bond hearing to be granted such immunity.
>
> . . .
>
> Furthermore, police officers act out their duties in an executive capacity, not a judicial capacity. Judicial capacity is associated with the function performed by a judge. The availability of judicial immunity depends on the function performed, not the identity of the actor who performed it. The most important question is whether the function is one normally performed by a judge and whether the parties are dealing with the judge in a judicial capacity. Judicial acts are shielded by judicial immunity, while administrative, legislative, or executive functions that judges may on occasion perform are not. A classic example of a judicial act is resolving disputes between parties who have invoked the jurisdiction of a court.

Filing 41 at 16–17. Accordingly, Mitchell argues that Officer Wiley is not entitled to absolute immunity.

Mitchell's concerns are unfounded, and his arguments are meritless. The Supreme Court has stated that "with respect to private witnesses, it is clear that § 1983 did not abrogate the absolute immunity existing at common law . . . for witnesses." *Briscoe v. LaHue*, 460 U.S. 325, 334 (1983). "[Section] 1983 does not authorize a damages claim against private witnesses." *Id.* at 335. "When a police officer appears as a witness, he may reasonably be viewed as acting like any other witness

sworn to tell the truth—in which event he can make a strong claim to witness immunity; alternatively, he may be regarded as an official performing a critical role in the judicial process, in which event he may seek the benefit afforded to other governmental participants in the same proceeding." *Id.* The Supreme Court acknowledged "the possibility that, despite the truth-finding safeguards of the judicial process, some defendants might indeed be unjustly convicted on the basis of knowingly false testimony by police officers." *Id.* at 345. However, the *Briscoe* court ultimately determined these witnesses are entitled to absolute immunity because "the alternative of limiting the official's immunity would disserve the broader public interest." *Id.* Because Mitchell's allegations only involve Officer Wiley's participation as a witness, Officer Wiley is entitled to absolute immunity. The claims against Officer Wiley are dismissed.

## I.   The Due Process Claim Against Officers Robbish and Dunwoody Is Dismissed

Count V of the Complaint is for a violation of "Due Process—Deliberate or Reckless Suppression of Evidence." Filing 1 at 39. This Count alleges that "defendants suppressed evidence that was favorable to the accused David Mitchell from the prosecutor and the defense." Filing 1 at 40 (¶ 140). Defendants contend that "Count V contains no factual allegations against" Officers Robbish and Dunwoody and that "[t]he only factual allegations made against them in the Complaint" are that they "seized the Plaintiff's property when they allegedly failed to return the property to the Plaintiff on demand." Filing 28 at 9–10. The Court agrees with Defendants.

The allegations against Officers Robbish and Dunwoody are nearly identical:

On information and belief, from the period August 23, 2022, through present Sgt. Robbish [and Dunwoody were] contacted by counsel for the plaintiff regarding the return of property under case # CR 19-3381. This property was seized, maintained, and retained under color of state law following dismissal of all criminal charges. This constitutes a seizure / taking of personal property unsupported by probable cause following dismissal of all charges. The only reason given for the failure to

> return the property was the lack of signature on a D200 by Sgt. Robbish. These acts, done under color of state law, individually and collective, serve as an overt step in furtherance of Defendant Kleine's conspiracy to violate the civil rights of the plaintiff David Mitchell.

Filing 1 at 11–12 (¶¶ 15–16). Plainly, the purported refusal to return seized property is wholly unrelated to the alleged suppression of evidence that forms the basis for Mitchell's due process claim. Thus, Mitchell's allegations fail to "make it not just 'conceivable' but 'plausible' that the defendant is liable" for the alleged violation of due process due to the unlawful suppression of evidence. *Mitchell*, 28 F.4th at 895. The Court does not need to "decide whether [Mitchell] has pleaded sufficient facts in his [ ] complaint to state a claim under any legal theory" because Mitchell did not file his Complaint as a pro se plaintiff. *Topchian*, 760 F.3d at 849. The Court "will 'not conjure up unpled allegations to save' [Mitchell's] claim." *Beard v. Falkenrath*, No. 22-2893, 2024 WL 1453246, at *5 (8th Cir. Apr. 4, 2024) (quoting *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 796 (8th Cir. 2021)). As with every other defendant, the claims against Officers Robbish and Dunwoody are dismissed.

### III. CONCLUSION

Accordingly, the Court grants the Motions to Dismiss as to the entirety of Mitchell's Complaint. The Court has no subject matter jurisdiction over the state law claims, which are barred by sovereign immunity. Mitchell has failed to establish *Monell* liability, and several other defendants are entitled to absolute immunity. Where Mitchell's claims are not otherwise barred, he failed to state a plausible claim for relief.

IT IS ORDERED:

1. Defendants' Motion to Dismiss, Filing 25, is granted; and

2. Defendants' Motion to Dismiss, Filing 27, is granted.

Dated this 12th day of April, 2024.

BY THE COURT:

_____

Brian C. Buescher
United States District Judge